101 So.2d 573

**ZAC SMITH STATIONERY CO.**

v.

**Lois REYNOLDS.**

**6 Div. 426.**

Court of Appeals of Alabama.

March 18, 1958.

David J. Vann and White, Bradley, Arant, All & Rose, Birmingham, for appellant.

Lipscomb, Brobston, Jones & Brobston, Bessemer, for appellee.

PRICE, Judge.

This is an appeal from a judgment in the Circuit Court of Jefferson County, Bessemer Division, in which the appellee, Lois Reynolds, was awarded unemployment compensation.

Disqualification of claimant, appellee here, is asserted by appellant under subsection B of Section 214, Title 26, Code 1940, as amended, which provides that an individual shall be disqualified for bene-

fits, "If he has left his employment voluntarily without good cause connected with such work."

Mrs. Reynolds testified she had worked for Zac Smith Stationery Company, Incorporated, for approximately 30 years, off and on, and continuously for the past four years. The last day she worked was February 10, 1955.

She was employed in the engraving department. Her work was feeding an embossing press. During the preceding Christmas Holidays there was a heavy rush of work, and when that was completed she had a big order for T. C. I., which she finished at noon the last day she worked.

Mrs. Reynolds worked on two presses, a large and a small one. She could not work on the large press without a helper. The T. C. I. work was done on the small press and a helper was not required. When this work was finished she was put on another type of work which required a helper but none was furnished and she couldn't see to do this work. She had tried to do this particular kind of work before. It was work on letter heads and envelopes which would not go through the drier. She had tried to get glasses fitted for this type of work but was told she had too many different positions, three different positions, three different jobs, and she didn't have enough vision to do it. This was the work she was doing after she finished the T. C. I. work and she had never been able to do it with the type glasses with which she had been fitted without the lay-out assistant.

When she attempted to inspect 500 envelopes it took 45 minutes instead of the 10 or 15 minutes it should have taken. She then went to tell her superior, Mrs. Campbell, that she was "completely off" and couldn't do that kind of work, that it was too much of a strain and made her too nervous. She told Mrs. Campbell she would stay at home the next day, which was Friday, and try to get herself together and would come back to work on Monday if she was able to do so. The next day she saw and talked with Mrs. Campbell at the bank. At that time Mrs. Campbell told her not to come in unless she, Mrs. Campbell, called her and not to worry about it. She was not able to work that day. Mrs. Campbell told her she must see Mr. Gilardoni, manager of the engraving department. When she was told she had the extra work to do she told Mrs. Campbell she couldn't see to do it, and Mrs. Campbell said she didn't have anything to do with that. Claimant then requested a transfer but didn't get to see Mr. Gilardoni, so she wrote a letter requesting a transfer.

She was not able to work the next week after she left. She did not hear from Mrs. Campbell so she called her at home on Saturday a week after she left work, but Mrs. Campbell was out of town. She called the office on Monday morning and Mrs. Campbell told her Mr. Gilardoni didn't like the way she was acting and had told Mrs. Campbell to replace her and that she had already been replaced.

On cross examination she testified she had called about other jobs before she left because Mrs. Campbell had told her she would have to do extra work that was coming in in about two months. She had explained to Mrs. Campbell that she couldn't do it and at the time she thought she would be able to get a job in a couple of months with Roberts & Sons, to whom Mrs. Campbell had promised to recommend her. She heard the boy in the office say that some of the work had come in the last day she was there.

Mrs. Reynolds said she took nothing with her when she left the office, "except just to make out my income tax." She left all her possessions and her daughter got them from Mrs. Campbell the following week. She told no one at the place that she was quitting. Her job had not changed at the time she left, except she should have had a helper the last afternoon she worked. She didn't remember whether she asked for a helper, but guessed she did, and didn't know why a helper was not furnished her.

In the letter to Mr. Gilardoni she asked for a transfer to the job of packer. She did not want Mrs. Watts fired so she could have her job, but she had been hired as a packer and had been there longer than Mrs. Watts.

Dr. Henderson, a licensed optometrist, testified he first examined Mrs. Reynolds in March, 1951. He found she had a hyperopia or far-sighted condition. When persons reach the age Mrs. Reynolds was, around forty years, they need help in the near area. She was fitted perfectly with glasses and was able to do her work until September, 1955. At that time she was operating a press and she had a distance problem of eye performance of 27 or 28 inches. This problem could not be solved with bifocal lenses and he attempted to solve it with trifocal lenses, but she was unable to adjust to them and unable to operate her machine. Mrs. Reynolds explained she had an assistant who did part of her work and without a helper she would be unable to operate with bifocals or trifocals. She became a nervous wreck and couldn't do her work at the necessary rate of speed.

On cross examination he testified he was not a medical doctor and was not licensed to treat eye diseases, but only to fit glasses. His measurements and prescriptions were made on the basis of measurements furnished by Mrs. Reynolds as to various distances in which her work was done.

The witness stated he thought the employer changed from slow drying to fast drying ink, but claimant did not tell him that was the reason for her problem. The question of the ink change and the fact that she had an assistant for part of the work came up in his questioning of her. The main reason for the difficulty in fitting her was going to be the greater amount of distance for her work. From age 40 to 45 the average person needs bifocals, and trifocals can be fitted to a number of patients from 45 to 52 years of age.

Mrs. Elsie Campbell, Supervisor of the company's engraving department, a witness for defendant, testified the Tennessee Company job was supposed to run from January to February; that claimant did work from one press to the other at times. On one place she had a helper. The company had ordered a sample of a new quick drying ink so that operator could lay out the work herself instead of having a helper to pick it up. Mrs. Reynolds seemed to be concerned about the new ink, that she couldn't do the work. The new ink had not been used when she left although it probably came in the last day she worked. It has never been adopted by the company for general use, and operators of the big press still use assistants. Claimant had mentioned she would like to be transferred when the new ink came in, but in order to do so the company would have to discharge the girl who did the packing. Claimant seemed to be upset and disgusted the day she left, and didn't think she was coming back. She just said she left this job and was disgusted. Claimant had a box but witness "didn't naturally think" she was taking her belongings with her, but on Monday she noticed Mrs. Reynolds had taken her personal things out of her desk. She later sent her daughter for her shoes and raincoat.

Mrs. Doris Gentry, company payroll clerk, testified she saw Mrs. Reynolds when she left work. Claimant said she was quitting and asked that her pay check be sent to her. She had a box which she told witness contained "All my things."

Appellant insists the evidence shows that claimant voluntarily left her work because of farsightedness, caused solely by her advancing age, and which she claimed would prevent her from doing work which she had heard she would be required to do in the future because of a proposed change in ink.

It is claimant's contention that because of the physical strain occasioned by the extreme rush of work during the Christmas Holidays and to the day she left, coupled with the fact that she was having extreme

**392**

difficulty with her vision due to the type of work she was doing without a helper, she became so extremely nervous that she took a few days off from her work with the consent of her supervisor, and that she did not voluntarily leave her employment.

The evidence on the question of whether claimant left her work voluntarily is conflicting.

■ Where the testimony is taken ore tenus before the trial court, and the evidence is in conflict, the judgment of the lower court has the weight of a jury verdict and its findings will not be disturbed unless plainly contrary to the great weight of the evidence. Department of Industrial Relations v. Haynes, 259 Ala. 238, 67 So.2d 62; Alabama Mills, Inc., v. Brand, 251 Ala. 643, 38 So.2d 574.

. ■ It is our opinion that the evidence was sufficient to sustain the judgment.

The judgment is affirmed.

Affirmed.